**Harold Lee FOSTER, Appellant,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

**No. 83–767.**

District of Columbia Court of Appeals.

Submitted May 29, 1985.

Decided June 14, 1985.*

Melvin A. Marshall, Washington, D.C., for appellant.

Charlotte Brookins-Pruitt, Asst. Corp. Counsel, Washington, D.C., with whom Inez Smith Reid, Corp. Counsel, John H. Suda, Principal Deputy Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for appellee.

Before MACK and FERREN, Associate Judges, and GALLAGHER, Associate Judge, Retired.

FERREN, Associate Judge: .

A jury convicted appellant of operating a motor vehicle after his driving privilege had been suspended, in violation of D.C. Code § 40–302(e) (Supp.1984). The court sentenced him to a term of 15 days in jail, execution of sentence suspended, placed him on one year's probation and imposed a $150 traffic enforcement fine. On appeal, he challenges the validity of his suspension, contending that, as a matter of law, the Department of Motor Vehicles (DMV) failed to give him proper notice of the proposed suspension and of the hearing scheduled on the suspension, as required by the agency's regulations. *See* 18 DCMR §§ 307.4, 307.6, 1006.7 (1981). Alternatively, he contends that, assuming proper notice was given, he substantially complied with the terms of the notice in requesting a hearing. He further maintains that the agency's failure to comply with its own regulations, following his timely request for a hearing, precluded the proposed suspension from becoming final. Appellant thus argues that his conviction must be reversed.[1] We conclude that ap-

---

\* The decision in this case was originally issued as an unpublished Memorandum Opinion and Judgment. It is now being published by direction of the court.

**1.** Appellant also argues that the court improperly denied his oral motion for recusal. Although the record is sparse, it appears that the trial judge initially recused himself from considering the case because appellant's counsel had filed a complaint against the judge that was still pending. Upon resolution of the complaint, the judge "requalified" himself. Appellant now con-

pellant knew his driving privilege had been suspended on the date of his arrest, and that he may not now collaterally attack the validity of that suspension. Accordingly, we affirm.

### I.

Appellant claims that sometime before October 28, 1981, the date on which his driver's permit was to expire, he went to DMV to renew his permit. His application was refused because he had three outstanding traffic citations from Maryland and Virginia, as well as an unpaid default judgment against him. Richard Greenblatt, a clerk at DMV whose job is to serve notices of permit suspensions and revocations, testified that on October 20, someone approached his station requesting information about appellant's permit. According to Greenblatt, such information is available only to the driver, the driver's attorney, or occasionally a relative, and identification is required. At that time, Greenblatt served a notice of proposed suspension, directed to appellant, on this person, who refused to sign the notice before leaving. The notice provided that the suspension would become final unless appellant requested a hearing within five days of service.[2]

Although appellant denied receiving this notice, his attorney wrote a letter on appellant's behalf to the agency, dated October 26, 1981, requesting a "pre-seizure" hearing and protesting the agency's failure to renew appellant's permit. The letter, however, misstated appellant's name (as "Howard Lee Foster") and his social security number. Although the agency's files are arranged by name and social security number, this letter nonetheless "eventually" found its way into appellant's DMV file. On October 28, appellant filed a motion in United States District Court for the District of Columbia, seeking to enjoin the agency from failing to renew his permit without a "presuspension hearing."[3]

On November 18, the agency apparently mailed a notice to appellant ordering him to surrender his driver's permit pursuant to the October 20 suspension order.[4] This notice was followed by a notice dated December 9, sent by certified mail, informing appellant that the agency had scheduled a hearing on his suspension for December 16. The return receipt introduced by the government was dated December 14 and bore the signature "Harold Lee Foster." Appellant testified that he never received the November 18 notice, and that the December 9 notice was received and signed for by his wife, who never informed him of

---

tends that the judge made certain remarks during trial demonstrating bias against appellant's counsel that required the judge once again to recuse himself. We find no merit in this contention. Appellant has not demonstrated that "the alleged bias ... was personal, rather than judicial," *Brooks v. United States,* 458 A.2d 66, 68 (D.C.1983); *see Baylor v. United States,* 360 A.2d 42, 44 (D.C.) (per curiam), *cert. denied,* 429 U.S. 1024, 97 S.Ct. 643, 50 L.Ed.2d 626 (1976), and the court expressly disclaimed any bias against appellant's counsel. Moreover, we have previously expressed doubt whether bias against counsel can mandate disqualification. *Id.*

2. Greenblatt testified that in computing this period, the agency considers only work days. Accordingly, the deadline for such a request would have been October 28.

3. The trial court excluded from evidence, as a matter of law, both the October 26 letter and the

motion filed in federal district court on October 28 on the ground that they were legally insufficient to request a hearing under 18 DCMR § 1005.2 (1981). That regulation provides that a "hearing demand shall be made in writing to the Director within five (5) days after the issuance of a ... suspension order." The October 28 motion sought to compel renewal of appellant's permit, not a pre-suspension hearing. The October 26 letter, because it bore an incorrect name and social security number, was not effective to notify "the Director within five (5) days" of appellant's desire for a hearing.

4. Greenblatt testified that, according to normal office procedure, the agency places carbon copies of notices in drivers' files at the time these notices are mailed. He further testified that all notices returned by the Post Office come to the attention of his office. The government introduced into evidence a copy of the November 18 notice, which Greenblatt authenticated.

it.[5] Neither appellant nor his counsel attended the December 16 hearing. The hearing officer sustained appellant's suspension, but concededly no notice of this decision was served on appellant.

In December 1982, appellant was stopped by a police officer for making an illegal left-hand turn. Upon discovering that appellant's now-expired license had been suspended, the officer arrested him.

## II.

In appealing his § 40–302(e) conviction, appellant argues that he never received notice of his permit suspension. Alternatively, he contends that he substantially complied with the terms of the October 20 notice by making a timely request for a hearing within five days.[6] He further maintains that, having made a timely hearing request, his proposed suspension was stayed until the hearing, *see* D.C.Code § 40–302(a) (1981); 18 DCMR 300.2, 1005.-10 (1981), and notes that the agency is required to give at least ten days' notice of the hearing, once scheduled. 18 DCMR § 1006.7 (1981). Thus, appellant argues that his proposed suspension could not have become effective before the December 16 hearing and, moreover, that because the agency failed to give the required ten days' notice, it had no authority to impose a final suspension on December 16. *See* 18 DCMR § 300.2.[7] Under either analysis, ap-

pellant argues, his proposed suspension never became final and therefore his conviction for operating a motor vehicle after suspension of his driver's permit cannot stand.

The trial court instructed the jury that the elements of the charged offense[8] are (1) that the defendant operated a motor vehicle in the District of Columbia; (2) that at the time the defendant operated the vehicle, his privilege to operate the motor vehicle in the District of Columbia had been suspended; and (3) that the defendant had notice that he was suspended. Although the standard jury instruction includes only the first two elements in its charge, *see* Criminal Jury Instructions for the District of Columbia, No. 4.94 (3d ed. 1978), the court chose to impose a notice requirement as well. We need not decide whether notice of a suspension is a necessary element of the offense,[9] for we conclude that there was sufficient evidence adduced at trial to permit the jury to find that adequate notice was given.

Appellant disputes Greenblatt's testimony that he was served with a notice of proposed suspension on October 20. His own counsel, however, advised the court that he had requested a hearing on the proposed suspension, presumably in response to the notice advising appellant of this right.[10]

---

**5.** A copy of the December 9 notice was also sent to appellant's counsel.

**6.** Appellant argues that his letter of October 26, despite any error, and his motion for temporary injunction should be deemed as timely requests. In view of our disposition of this appeal, we need not decide whether these requests were sufficient under 18 DCMR § 1005.2.

**7.** Section 300.2 reads in part: "The Director is authorized, after giving notice and an opportunity for hearing, to suspend or revoke the license of any person...."

**8.** D.C.Code § 40–302(e) (Supp.1984) provides in part: "Any individual found guilty of operating a motor vehicle in the District during the period for which the individual's license is revoked or suspended ... shall, for each such offense, be

fined not to exceed $5,000 or imprisoned for not more than 1 year, or both."

**9.** *But see generally Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1583, 29 L.Ed.2d 90 (1971) and *Abbott v. District of Columbia,* 154 A.2d 362 (D.C.1959).

**10.** The government also argues that Greenblatt's testimony regarding the November 18 notice, which directed appellant to surrender his permit, was sufficient to establish a presumption of receipt by the addressee. This presumption "is created by proof that mail matter was properly stamped, addressed, and delivered to the post office." *Allied American Mut. Fire Ins. Co. v. Paige,* 143 A.2d 508, 510 (D.C.1958). Even assuming that Greenblatt's testimony provided adequate foundation for this presumption, *but see supra* note 4, the presumption may be effectively rebutted by the addressee's denial of receipt.

■ Similarly, although appellant denies receiving the December 9 notice, which advised him of the hearing scheduled for December 16, he concedes that his wife signed the return receipt for this notice. The jury may reasonably have found that appellant was aware of this fact. *Cf. Firemen's Insurance Co. of Washington, D.C. v. Belts*, 455 A.2d 908, 909–10 (D.C.1983) (per curiam) (process server's unrebutted affidavit showing service on defendant's wife sufficient to establish constructive service on defendant).

■ Appellant then failed to attend this hearing and subsequently failed to take any further action, despite the fact that the December 9 notice advised him that he could move for reconsideration of the hearing examiner's decision. Appellant's counsel conceded that he also was aware that appellant could request a rehearing. *See also* 18 DCMR § 1005.10, which provides that "If any person fails to appear at a hearing scheduled by the Director without good cause shown, ... the [proposed] order shall become effective...." Although appellant's counsel was presumably aware of DMV regulations, there is no evidence that either he or appellant made any further inquiry of the agency. It is fair to assume that appellant must have known that inaction would result in a final suspension order.

In sum, there was ample evidence from which the jury could properly infer that appellant knew his permit had been suspended when he was arrested one year later.

Because of appellant's failure to pursue his administrative remedies, the hearing examiner's decision sustaining his suspension must be considered conclusive. *See District of Columbia v. Heman Ward, Inc.*, 261 A.2d 836, 840 (D.C.1970). Appellant may not now mount a collateral attack on that decision. As we said in *Abbott v. District of Columbia*, 154 A.2d 362, 363 (D.C.1959), "[i]f [appellant] felt there was

*Columbia Fin. Co. v. Worthy*, 141 A.2d 185, 187 (D.C.1958). The effect of such a denial, there-

some invalidity in the proceeding he should have taken the steps provided by law to correct it. He had no right to continue to operate a vehicle until apprehended and then make a belated attack on the [suspension] order."

*Affirmed.*

fore, is to raise an issue of fact for the jury to resolve.